1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE PLASCENCIA,                        No. 2:14-cv-02412 WBS KJN P

12                  Petitioner,

13        v.                                 FINDINGS & RECOMMENDATIONS

14   RAYMOND MADDEN, Warden,[1]

15                  Respondent.

16

17   I.  Introduction

18        Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2011 conviction for battery

20   and two counts of obstructing an officer in the performance of his duties.  Petitioner claims the

21   trial court erred by failing to *sua sponte* instruct on self-defense, and alleges various claims of

22   ineffective assistance of trial and appellate counsel.  After careful review of the record, this court

23   concludes that the petition should be denied.

24   II.  Procedural History

25        On July 25, 2011, a jury found petitioner guilty of battery by a prisoner of a non-confined

26   person (Lt. Ventimiglia) and two counts of obstructing an officer in the performance of his duties

27   ─────────────
     [1] The current Warden of Centinela State Prison is Raymond Madden, who is substituted as
28   respondent in this matter.  Fed. R. Civ. P. 25(d); see Brittingham v. United States, 982 F.2d 378,
     379 (9th Cir. 1992).

                                              1

1   (Lt. Ventimiglia and Sgt. Quinn).  (Clerk's Transcript ("CT") at 177; ECF No. 21-6 at 2.)  The

2   jury also acquitted petitioner on all counts related to Officer Wallace.  On August 12, 2011,

3   petitioner was sentenced to 25-years-to-life in state prison.  (CT 177.)

4         Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

5   District.  The Court of Appeal affirmed the conviction on August 26, 2013.  (ECF No. 21-6.)

6         Petitioner filed a petition for review in the California Supreme Court, which was denied

7   on November 3, 2013.  (ECF No. 21-7.)

8         Petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior

9   Court, which was denied in a reasoned opinion on October 2, 2014.  (ECF No. 21-8.)

10        Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal,

11  Third Appellate District, which was summarily denied on November 20, 2014.  (ECF No. 21-10.)

12        Petitioner filed a petition for writ of habeas corpus in the California Supreme Court which

13  was denied without comment on April 15, 2015.  (ECF No. 21-11.)

14        Petitioner filed the original petition on October 24, 2014.  (ECF No. 1.)  Petitioner filed a

15  first amended petition on May 26, 2015, and a second amended petition on June 10, 2015.  (ECF

16  Nos. 17, 18.)  By order filed September 26, 2017, petitioner's jury instruction claim was removed

17  from the original petition and added to the second amended petition, to be identified as

18  petitioner's claim "three" rather than "one."  (ECF No. 32 at 2.)  Respondent was provided an

19  opportunity to file an amended answer, but chose to stand on the previous answer.  (ECF Nos. 32

20  at 3; 33 at 1.)

21  III.  Facts[2]

22        In its unpublished memorandum and opinion affirming petitioner's judgment of

23  conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

24  following factual and procedural summary:

25  ////

26

27  _____

    [2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
28  District in People v. Plascencia, No. C068979, a copy of which was lodged by respondent on July
    6, 2015.  (ECF No. 21-6.)

*Charges*

The People charged defendant with two counts of battery by a prisoner on a non-confined person (Pen. Code, § 4501.5) [FN1] as against both Wallace (count one) and Ventimiglia (count two) and three counts of obstructing an officer in the performance of his duties as against Wallace (count four), Ventimiglia (count three) and Quinn (count five). (§ 69) They also alleged defendant had sustained three prior serious felony convictions. (§§ 1192.7, subd. (c), 667, subds. (b)-(i), 1170.12.)

> [FN1. Further undesignated statutory references are to the Penal Code.]

*People's Case at Trial*

Defendant was an inmate in the general population of New Folsom prison. In April 2009, defendant was in an interview room; Wallace and Ventimiglia were also in the room, while Quinn remained outside.

The interview was going well; defendant was cooperative, no angry or harsh words were exchanged, and defendant was not handcuffed. At the end of the interview, defendant stood up, turned his back toward Wallace, and placed his hands behind his back to be handcuffed. He then suddenly spun toward Wallace, said "don't take this personal" and punched Wallace in the face. Wallace stumbled backwards. Defendant moved toward him and threw another punch. Wallace grabbed defendant's wrist and the men struggled as Ventimiglia came to assist Wallace. Ventimiglia grabbed defendant's shoulder and defendant hit him in the eye. Defendant continued to struggle with Ventimiglia and Wallace, punching at them and thrashing around to avoid being handcuffed. Quinn saw the men struggling and defendant swinging his closed fist at Wallace. He forced the door open and defendant, Wallace and Ventimiglia fell to the ground. Quinn tried to restrain defendant in a bear hug and by grabbing his right hand and holding defendant against the wall. Defendant continued to resist, thrashing and swinging his arms. With the assistance of additional staff, defendant was ultimately subdued.

*Defendant's Case at Trial*

Defendant admitted he struggled with the officers, but claimed he acted in self-defense. He testified that as Wallace was placing him in handcuffs, Wallace asked if defendant had any information on misconduct by other inmates, to which defendant responded, "Fuck no." Wallace then aggressively grabbed defendant's wrists, yanked his collar and hit the back of his head. Defendant then turned and hit Wallace. As Wallace was coming back at defendant, defendant tried to hit Wallace again and missed. Ventimiglia then came running toward defendant with his fist raised, looking as though he was going to hit defendant. Defendant was afraid he was going to be hurt by Ventimiglia, so defendant hit him. He thought the officers were going to beat him because he refused to provide information on other

3

inmates. During the struggle, the officers "hit him all over." Defendant denied ever saying it was not "personal."

*People's Rebuttal Case*

Wallace denied aggressively grabbing defendant's hands, the back of his collar or hitting him the head. He also denied asking defendant to inform on other inmates. Ventimiglia denied that either he or Wallace asked defendant to inform on other inmates and denied punching defendant in the face or hitting him in the head.

*Instructions and Verdicts*

The trial court instructed the jury that as an element of both battery and assault, the prosecution had to establish defendant did not act in self-defense. It also instructed that an officer is not lawfully performing his duties if using unreasonable or excessive force. The trial court further instructed that a defendant is not guilty of resisting an officer who is lawfully performing his duties if the officer is using unreasonable or excessive force. It described and defined the lawful performance of a custodial officer's duties and a police officer's duties, each of which includes the provision that an officer is not lawfully performing his duties if using unreasonable or excessive force. Those instructions also specify that if an officer uses unreasonable or excessive force, a person may lawfully use reasonable force to defend himself. The trial court instructed the jury that a person's use of force to defend himself is reasonable if (1) it is the amount of force he actually believes is reasonably necessary to protect himself and (2) is no more force than a reasonable person in the same situation would believe is necessary. It did not read 3470, regarding the general right to self-defense; neither party requested that instruction.

The jury found defendant guilty of one count of battering Ventimiglia and obstructing Ventimiglia and Quinn. It acquitted him on all counts related to Wallace. In bifurcated proceedings, the jury found the prior conviction allegations true. The trial court struck one of the prior convictions and sentenced defendant to 25-years-to-life in prison.

(People v. Plascencia, C068979 (Cal. App. 3 Dist. Aug. 26, 2013) (ECF No. 21-6 at 3-5.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

////

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court.  Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny

relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

A. Alleged Ineffective Assistance of Trial and Appellate Counsel

Petitioner contends that trial counsel failed to investigate misconduct by correctional officers Ventimiglia, Wallace, and Quinn, in violation of the Department Operational Manual ("DOM") prison regulations prior to the physical altercation and during the incident. (ECF No. 18 at 5.) Petitioner claims that trial counsel was ineffective because any rational defense attorney would have defended petitioner on the ground that prison regulations required that petitioner be and remain handcuffed when being interviewed. (ECF No. 18 at 6.) Petitioner argues that defense counsel should have tried to get evidence to show that the officers did not act within their lawful duties. (Id.)

Petitioner also alleges that trial counsel's failure to address petitioner's gang validation by the three officers on April 6-8, 2009, was prejudicial because it showed the officers noncompliance with the DOM regulations. (ECF No. 18 at 5.) Next, petitioner claims that trial counsel's failure to file a Pitchess motion to determine if past conduct by officers Ventimiglia, Wallace, and Quinn would have corroborated petitioner's defense constituted ineffective assistance of counsel. (ECF No. 18 at 5); Pitchess v. Superior Court, 11 Cal. 3d 531 (1974). Further, petitioner contends that trial counsel failed to investigate "excessive malice force." (ECF No. 18 at 5.)

8

Finally, petitioner argues that any rational appellate counsel would have raised these attacks on trial counsel's performance, and the failure to do so constitutes ineffective assistance of appellate counsel.

Respondent counters that the verdict reflects that the only duty the jury could have found petitioner obstructed, as to the responding officers, was a post-interview duty to end the violence. No matter the cause of the violence, respondent argues that petitioner would not be immunized as to his election to resist the responding officers' efforts to bring the violence to an end. Respondent contends that petitioner identifies no evidence that required judicial action; thus, such claim is based on rank speculation. Finally, respondent argues that it was reasonable to doubt that all attorneys would think extra-record-based attacks on trial counsel were not the strongest claim to advance on appeal. (ECF No. 22 at 2.)

*Legal Standards for Ineffective Assistance of Counsel Claims*

The clearly established federal law for ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see Richter, 562 U.S. at 105. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

1  may have had for proceeding as they did." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011)

2  (internal quotation marks and alterations omitted).

3      Prejudice is found where "there is a reasonable probability that, but for counsel's

4  unprofessional errors, the result of the proceeding would have been different." Strickland, 466

5  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

6  outcome." Id.  "The likelihood of a different result must be substantial, not just conceivable."

7  Richter, 562 U.S. at 112.  A reviewing court "need not determine whether counsel's performance

8  was deficient before examining the prejudice suffered by the defendant as a result of the alleged

9  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

10 sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

11 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

12     Under AEDPA, "[t]he pivotal question is whether the state court's application of the

13 Strickland standard was unreasonable." Id. at 785.  "[B]ecause the Strickland standard is a

14 general standard, a state court has even more latitude to reasonably determine that a defendant has

15 not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

16     Claims of ineffective assistance of appellate counsel are also reviewed according to the

17 standard set out in Strickland.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  The presumption

18 that counsel acted reasonably is even stronger for appellate counsel because she has wider

19 discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one

20 of the hallmarks of effective appellate assistance.  Miller v. Keeney, 882 F.2d 1428, 1434 (9th

21 Cir. 1989).  First, petitioner must show that counsel's performance was objectively unreasonable,

22 which in the appellate context requires the petitioner to demonstrate that counsel acted

23 unreasonably in failing to discover and brief a merit-worthy issue.  Smith, 528 U.S. at 285;

24 Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).  Second, petitioner must show

25 prejudice, which in this context means that the petitioner must demonstrate a reasonable

26 probability that, but counsel's failure to raise the issue, the petitioner would have prevailed.

27 Smith, 528 U.S. at 285-86; Moormann, 628 F.3d at 1106.

28 ////

*California Court of Appeal Decision*

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case. (<u>In re Bower</u> (1985) 38 Cal.3d 865, 872.) A petition should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (<u>People v. Duvall</u> (1995) 9 Cal. 4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (<u>In re Alvernaz</u> (1992) 2 Cal. 4th 924, 937.) It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions. (<u>In re Avena</u> (1996) 12 Cal. 4th 694, 722.) Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (<u>Strickland v. Washington</u> (1984) 466 U.S. 668, 694.) If no prejudice is established, it is unnecessary to determine whether counsel's performance was deficient. (<u>In re Fields</u> (1990) 51 Cal. 3d 1063, 1079.) A petition alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had. (<u>People v. Geddes</u> (1991) 1 Cal. App. 4th 448, 454.)
>
> Petitioner's 2011 conviction of battery on a non-inmate and two counts of resisting an executive officer was affirmed on appeal in August 2013 and became final in November 2013. He now claims that trial counsel was ineffective for failing to file [a] <u>Pitchess</u> motion and investigate and present certain evidence. He also claims that appellate counsel was ineffective.
>
> A. <u>Trial Counsel</u>
>
> Petitioner was charged with battery on correctional officer Wallace and correctional lieutenant Ventimiglia as well as deterring Wallace, Ventimiglia, and correctional sergeant Quinn. Petitioner was convicted of the offenses against Ventimiglia and Quinn, but acquitted of the offenses against Wallace. Petitioner's primary claim is that trial counsel was ineffective for failing to investigate and present evidence that the correctional officers violated prison rules regarding handcuffing Petitioner in the interview prior to the conduct that resulted in his conviction. In particular, he claims that he should have been in handcuffs during the entire interview or he should [have] been interviewed in a holding cell or management cell. Petitioner does not explain how this investigation or evidence would

have affected the outcome of the trial. Even if trial counsel had presented evidence of the rule violation, there is no indication that the evidence could have persuaded the jury to believe that Petitioner was not guilty of the offenses against Ventimiglia or Quinn, i.e., the rule violation did not render Petitioner's conduct against Ventimiglia and Quinn justified or in self-defense.

Next, Petitioner claims that trial counsel was ineffective for failing to file a <u>Pitchess</u> motion, presumably to discover evidence that the correctional officers had previously been involved in other incidents of excessive force. However, Petitioner has not shown that filing a <u>Pitchess</u> motion would have resulted in the discovery of any actual evidence.

Finally, Petitioner claims that counsel's tactical decision not to present evidence of Petitioner's gang validation that immediately preceded the events was erroneous. Petitioner has failed to explain how counsel's decision was wrong, that no reasonable attorney would have made the same decision, or that the decision resulted in prejudice to Petitioner's case. Therefore, he has not shown that trial counsel's representation was ineffective.

### B. Appellate Counsel

Appellate counsel performs "properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim." (<u>In re Robbins</u> (1998) 18 Cal. 4th 770, 810.)

Petitioner claims that appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective. As discussed above, petitioner has not shown that trial counsel was ineffective. In addition, Petitioner argues that appellate counsel should have argued that there were additional errors relating to jury instructions. However, Petitioner does not identify any alleged instructional errors. Therefore, he has not shown that he is entitled to any relief.

<u>In re the Matter of Jose Plascencia, On Habeas Corpus</u>, Case No. 14HC00473 (ECF No. 21-8 at 2-4.)

*Analysis*

A. <u>Trial Counsel's Failure to Use Petitioner's Preferred Defense was Not Deficient</u>

Petitioner's claim that trial counsel failed to investigate or present a specific defense does not establish ineffective assistance of counsel under <u>Strickland</u>.

First, trial counsel's failure to investigate or present this "preferred defense" cannot meet the first prong of <u>Strickland</u>. The Supreme Court recognizes a criminal defendant's authority

over some portions of the trial: whether to plead guilty, waive a jury, testify in his own defense or pursue an appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). However, petitioner's defense attorney "is in charge of the choice of trial tactics and the theory of defense." United States v. Wadsworth, 830 F.2d 1500, 1509 (9th Cir. 1987), citing Henry v. Mississippi, 379 U.S. 443, 451 (1965) (counsel's deliberate choice of strategy is binding on his client). See also United States v. Corona-Garcia, 210 F.3d 973, 977 n.2 (9th Cir. 2000) ("Even if we were to conclude that the conflict with respect to the trial tactics was severe, however, we would still be disinclined to reverse on that ground because trial tactics are clearly within the realm of powers committed to the discretion of defense counsel in any event."). Just because defense counsel pursued a self-defense theory rather than petitioner's preferred defense theory is insufficient to demonstrate a Sixth Amendment violation.

Second, the state court properly found that petitioner failed to demonstrate prejudice under Strickland. Petitioner claims that trial counsel failed to show the correctional officers were not acting within their lawful duty and in accordance with department policy when they failed to keep petitioner in handcuffs or locked in a cell after his gang validation. But, as found by the state court, petitioner fails to show how this purported defense would have changed the outcome of the trial. Indeed, such argument could have been prejudicial to petitioner inasmuch as it would portray him as violent and in need of restraints.

Further, defense counsel also chose not to introduce information about petitioner's gang validation by officers Ventimiglia, Wallace, and Quinn. In fact, defense counsel did the opposite. On the first day of trial defense counsel moved to exclude reference to gang membership. (ECF No. 21-1 at 65.) Trial counsel likely thought this defense would prejudice a jury against someone viewed as a violent gang member, and that strategy is not ineffective assistance of counsel.

Finally, as the state court properly found, petitioner provides no evidence that if trial counsel had filed a Pitchess motion any evidence against the officers would have been discovered. Accordingly, petitioner has not offered any proof that the filing of a Pitchess motion would have significantly altered this case, such that he did not receive a fair trial.

For all of the above reasons, the state court's decision was not contrary to or an unreasonable application of clearly established Supreme Court authority.

B. Because Trial Counsel was Not Ineffective, Appellate Counsel was Not Ineffective

To reiterate, the state court reasoned that "appellate counsel performs 'properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim.'" (ECF No. 21-8 at 2-4), quoting In re Robbins 18 Cal. 4th 770, 810 (1998).

Petitioner argues that any rational appellate counsel would have raised an ineffective assistance of counsel claim regarding trial counsel's refusal to argue the above-mentioned defense. Petitioner further claims that appellate counsel's failure to raise an ineffective assistance of trial counsel claim constitutes ineffective assistance of appellate counsel. However, both the state court and this court have found that petitioner's claims for ineffective assistance of trial counsel have no merit. (ECF No. 21-8 at 2-4.) Thus, as found by the state appellate court, because the petitioner was not able to prove an ineffective assistance of trial counsel claim, petitioner's claim for ineffective assistance of appellate counsel is unavailing.

B. Failure to *Sua Sponte* Instruct on Self-Defense

Petitioner claims that he was prejudiced by the trial court's failure to instruct the jury on the state law theory of self-defense, CALCRIM No. 3470, because it was relevant to his defense. (ECF No. 18 at 20, 30-40.) Petitioner argues that because the jury acquitted him of assaulting Wallace the jury believed that Wallace initiated the altercation, therefore supporting petitioner's argument that he was only defending himself.

Respondent argues that petitioner failed to address whether the state court decision involved unthinkable application of federal law clearly established by the Supreme Court, or involved findings of fact unthinkable given the record that was before the state court, and petitioner's mere disagreement, *de novo*, is insufficient. (ECF No. 22 at 10.) Similarly, respondent contends that petitioner's disagreement with the state court ruling on state law is not cognizable. (Id.)

////

In reply, petitioner argues that it was prejudicial for the jury to only hear self-defense mentioned in other contexts, but not included as a separate instruction where self-defense could be defined, and where bench notes advise a court to issue other appropriate self-defense instructions, CALCRIM 3470-77 series.  (ECF No. 29 at 2.)

*Legal Standards for Instructional Error*

In general, a challenge to jury instructions does not state a federal constitutional claim. Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  An error in a state court determination that a jury instruction was not warranted under state law cannot form the basis for federal habeas relief.  Estelle, 502 U.S. at 67-68; Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) ("A state court's finding that the evidence does not support a claim of imperfect self-defense is entitled to a presumption of correctness on federal habeas review.").  Rather, "a claim that a court violated a petitioner's due process rights by omitting an instruction requires a showing that the error 'so infected the entire trial that the resulting conviction violate[d] due process.'"  Menendez, 422 F.3d at 1029 (citations omitted). Where the challenge is to a failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

"Due process requires that criminal prosecutions 'comport with prevailing notions of fundamental fairness' and 'criminal defendants be afforded a meaningful opportunity to present a complete defense.'"  Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  "Failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and the evidence in the case makes it applicable." Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004) (as amended).  However, a defendant is not entitled to the giving of jury instructions embodying the defense theory if the evidence does not support that theory.  Mathews v. United States, 485 U.S. 58, 63 (1988) ("a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor"); Lewis v. Runnels, 2007 WL 2701791, at *17-18 (N.D.

15

Cal. Sept. 13, 2007) (prisoner not entitled to federal habeas relief on jury instruction error claim where a defense of others instruction was not called for in light of the evidence introduced at trial).

Because a failure to give a jury instruction is a trial error, petitioner is entitled to relief only if he can show prejudice. <u>Dixon v. Williams</u>, 750 F.3d 1027, 1034 (9th Cir. 2014). The Supreme Court provided the test for prejudice in this context. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007). Under <u>Brecht</u>, "an instructional error is prejudicial and habeas relief is appropriate only if, after reviewing the record as a whole, we conclude that there was a substantial and injurious effect or influence on the verdict, or if we are 'left in grave doubt' as to whether there was such an effect." <u>Pulido v. Chrones</u>, 629 F.3d 1007, 1012 (9th Cir. 2010) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 765 (1946)).

*California Court of Appeal Decision*

The last reasoned rejection of petitioner's third claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

I

Overview

Defendant contends the trial court prejudicially erred in failing to *sua sponte* instruct the jury on self-defense as set forth in 3470. As relevant to defendant's claims, 3470 provides that:

The defendant acted in lawful self-defense . . . if:

1.The defendant reasonably believed that he was in imminent of suffering bodily injury or was in imminent danger of being touched unlawfully;

2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

AND

3. The defendant used no more force than was reasonably necessary to defend against that danger.

[¶] . . . [¶]

16

When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

[¶] . . . [¶]

[If you find that the defendant received a threat from someone else that [he] reasonably associated with [the victim], you may consider that threat in deciding whether the defendant was justified in acting in self-defense.]

[¶] . . . [¶]

The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of <insert crime(s) charged>."

It is well-settled that even in the absence of a request, the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence (People v. Breverman (1998) 19 Cal. 4th 142, 154) and on defendant's theory of defense where "". . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense. . . ."" [Citations.]" (People v. Olguin (1981) 119 Cal.App.3d 39, 46.)

In this case, defendant was relying on a theory of self-defense and the failure to act in self-defense is an element of the offense that the People must establish. Thus, some instruction on self-defense was necessary. This does not mean, however, that the trial court erred in failing to include the language from the instructions that defendant now argues was required. As we explain post, there was no error.

Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.]" (People v. Ramos (2008) 163 Cal. App. 4th 1082, 1088.) In examining the record for error in jury instructions, we consider the instructions as a whole and assume jurors are intelligent persons, capable of understanding and correlating all jury instructions which are given. (Ibid.) "'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (Ibid.)

II

Specific Contentions

Defendant complains that "the lack of a [3470] instruction meant the jury was not directed to consider all the elements in the case which might be expected to operate on the mind of a person in [defendant's] circumstances, with respect to self-defense." He adds that because 3470 was not given, the jury was not informed that: (1)

if defendant's beliefs about the need to act in self-defense were reasonable, the perceived danger need not have actually existed; (2) the People had the burden of dispelling any reasonable doubts as to the existence of self-defense; and (3) a threat by one person, Wallace, could be interpreted to require self-defense against another person, such as Quinn and Ventimiglia. He observes that the absence of language on the need to avoid "imminent harmful or offensive" conduct contained in 3470 appeared to limit self-defense to a situation where the battery had already occurred. We address defendant's various contentions in the order we find most efficient.

## A. Burden of Proof

Defendant first complains that by failing to give 3470, the trial court did not adequately inform the jury that the People bore the burden to dispel any reasonable doubt as to whether defendant's actions amounted to self-defense. We are not persuaded.

The trial court described and defined the beyond a reasonable doubt standard (CALCRIM No. 220); it instructed the jury that each fact essential to establish guilt must be proven beyond a reasonable doubt (CALCRIM No. 220); and it told the jury that the fact that defendant did not act in self-defense was a fact the People were required to prove as to battery by a prisoner on a non-prisoner, and the lesser included offenses of simple battery and simple assault. (§§ 4501.5, 242, 243, subd. (a); CALCRIM Nos. 2723, 960, 915.) Thus, the jury was properly advised that the People bore the burden to dispel any reasonable doubts about whether defendant acted in self-defense.

## B. Appropriateness of Unchallenged Instructions

Defendant next argues by failing to instruct with 3470, the trial court did not adequately advise the jury to consider "all the elements in the case which might be expected to operate on the mind of a person in [defendant's] circumstances." Defendant does not complain that the instructions given were incorrect. Rather, he claims that they were incomplete in that they did not incorporate those portions of 3470 that instruct: (1) if defendant's beliefs about the need to act in self-defense were reasonable, the perceived danger need not have actually existed; (2) self-defense can apply when facing an imminent prospective application of force; and, (3) a threat by one person could be interpreted by defendant to require self-defense against another.

"'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (People v. Hudson (2006) 38 Cal. 4th 1002, 1011-1012.) Defendant made no such request here. Accordingly, his claims of instructional error are forfeited.

In any event, the claims lack merit. The reasonableness of a defendant's beliefs and conduct are judged from the viewpoint of a reasonable person in the same position as defendant. (People v. McGee (1947) 31 Cal. 2d 229, 238.) "To do this, [the jury] must

consider all the "'"facts and circumstances . . . in determining whether the defendant acted in a manner in which a *reasonable man* would act in protecting his own life or bodily safety."'" [Citation.]" (People v. Jefferson (2004) 119 Cal. App. 4th 508, 518, original italics.) Here, the trial court appropriately instructed the jury that defendant was entitled to defend himself from unreasonable or excessive force by using the degree of force he actually believed was reasonably necessary to protect himself and use no more force than "*a reasonable person in the same situation* would believe is necessary for his or her protection." (CALCRIM Nos. 2670, 2671, emphasis added.) The phrase "in the same situation" includes considering "all the elements which might be expected to operate on the mind of a person in defendant's circumstances."

The trial court also clarified that the jury must decide all the facts based on the evidence admitted at trial. The failure to expressly reference specific evidence cannot reasonably be construed as a direction to the jury to exclude that evidence from its consideration. (People v. Spencer (1996) 51 Cal. App. 4th 1208, 1220-1221.) Similarly, the court instructed the jury that it must follow the law as the court explained it and to follow the instructions to the facts as it found them. The court informed the jury that defendant had to actually and reasonably believe the use of force was reasonably necessary to protect himself. It is not reasonable to presume the jury added the nonexistent requirement that defendant be correct in his assessment of the danger he believed he faced. Thus, taken as a whole, the instructions adequately advised the jury to consider all the relevant circumstances in which defendant found himself. (Ibid.)

While we agree that the instructions as given did not include an explanation that the person claiming self-defense must reasonably believe he is in imminent danger of being touched unlawfully or suffering bodily injury, this explanation does not apply to defendant's case. An inmate has a limited right of self-defense against an officer. (People v. Saavedra (2007) 156 Cal. App. 4th 561, 569.) A correctional officer may lawfully use force on an inmate to restrain a person, to overcome resistance, to prevent escape, or in self-defense, but the use of force must be reasonably calculated to further the lawful purpose. (Pen. Code, § 835a; CALCRIM No. 2671; cf., Cal. Code Regs., tit. 15, § 3268, subd. (a)(1).) The applicable statutes were fashioned to protect officers "against violent interference with the performance of [their] duties" (People v. Buice (1964) 230 Cal. App. 2d 324, 336; see also People v. Martin (2005) 133 Cal. App. 4th 776, 782.) Thus, an inmate's right to self-defense against an officer applies only when the inmate is faced with an improper use of force by the officer, because that is what renders the officer's conduct unlawful. (See People v. Coleman (1978) 84 Cal. App. 3d 1016, 1023.) Thus, in this context, defendant did *not* have a right to use force to resist an officer *unless* that officer was actually using unreasonable or excessive force. Prospective force by an officer does not trigger an inmate's right to defend himself as does *actual* use of *improper* force.

Defendant further claims that the trial court was required to tell the jury that if it found defendant had received a threat from Wallace that

19

he reasonably associated with Quinn and Ventimiglia, it could consider that fact in assessing the reasonableness of defendant's actions. Instructions need only be given on issues supported by substantial evidence. (People v. Shelmire (2005) 130 Cal. App. 4th 1044, 1055.) "Substantial evidence is 'evidence which is reasonable, credible, and of solid value[.]' [Citations.] On review, we determine independently whether substantial evidence to support a defense existed." (Id. at pp. 1055-1056.) Thus, to meet that standard in this case, there would have to be substantial evidence that defendant received a threat from Wallace and that he *reasonably* associated that threat with Quinn and Ventimiglia. There is not substantial evidence for either claim.

There was no evidence that Wallace ever threatened defendant; rather, defendant's claim was that in response to defendant's refusal to inform on other inmates, Wallace assaulted him. Thus there was no evidence defendant "received a threat from someone" such that this portion of the instruction would be merited. (CALCRIM No. 3470; (Compare with People v. Minifie (1996) 13 Cal.4th 1055, 1061-1062, 1065-1066 (Minifie); People v. Pena (1984) 151 Cal.App.3d 462, 469-472.)

Further, even were we to construe Wallace's hitting defendant as a *threat received* by defendant from Wallace, there is no evidence defendant *reasonably* associated that threat with Quinn and Ventimiglia.[FN2] A self-defense claim is viewed from the perspective of the defendant -- threats from a family and its friends, a clan, a gang or another group "united against [defendant]" may reasonably affect defendant's state of mind, particularly when the group has a reputation for violence known to defendant. (Minifie, *supra*, 13 Cal. 4th at p. 1066.) Here, there is no evidence that Wallace, Quinn and Ventimiglia were members of a group united against defendant. Other than their status as officers, there was no evidence of any particular relationship or history between the officers or involvement in any group. There is no evidence of any pre-existing animosity between defendant and the officers, no evidence of a history of unified activity by the officers, and no evidence of a record of concerted violence committed by the officers. Nor is there any evidence the officers had a reputation for any such conduct. This leaves only their status as fellow officers to support the inference they would act in concert to beat defendant because of his refusal to inform on other inmates. Their status as officers alone cannot reasonably support such an inference. To the contrary, when there is a physical altercation between an officer and an inmate, the other officers are obligated to intervene and break up, or end, the fight. (Cal. Code Regs., tit. 15, § 3271, 3286, 3300; see also Furtado v. State Personnel Board (2013) 212 Cal. App. 4th 729, 746-747.) This is true whether defendant or Wallace were the aggressor; it is true even if Wallace were using excessive force. (See O'Neill v. Krzeminski (2d Cir. 1988) 839 F.2d 9, 11 ["A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers"].)

[FN2. To the extent defendant argues his acquittal of counts related to Wallace weakens his conviction of counts related to Quinn and Ventimiglia, we note only that it is well-settled that an acquittal on one charge does not change the strength of the evidence on another, which might have been due to lenity or other reasons. (See People v. Lewis (2001) 25 Cal. 4th 610, 655-656; People v. Brown (1985) 174 Cal. App. 3d 762, 769; People v. Pahl (1991) 226 Cal. App. 3d 1651, 1656-1657.)]

An inference is not reasonable if it is based only on speculation. (People v. Hughes (2002) 27 Cal.4th 287, 365.) On this record, the reasonable inference to be drawn from the evidence of Quinn and Ventimiglia joining in the fight between defendant and Wallace is that they were joining *in order to end the fight* -- in other words, doing their duty. "The right of the accused to have the jury instructed upon every theory of his innocence of the crime charged does not extend to a claim of self-defense based upon purely imagined facts or upon inference that could not be drawn by rational minds." (People v. Hudgins (1967) 252 Cal. App. 2d 174, 179.) Since there was not substantial evidence to support this theory of defense, the court was not obligated to instruct on it. (People v. Joiner (2000) 84 Cal. App. 4th 946, 972; see also People v. Breverman (1998) 19 Cal. 4th 142, 162.)

People v. Plascencia, C068979 (Cal. App. 3rd Dist. Aug. 26, 2013); (ECF No. 21-6 at 5-12).

*Analysis*

The state court properly found that self-defense was a defense that existed under state law, and that the trial judge had a duty to instruct on self-defense. However, the state court also properly found that the jury instructions, when read together, required the jury to (a) find that the prosecution had to prove, beyond a reasonable doubt, that petitioner did not act in self-defense (ECF No. 21-1 at 104), and (b) objectively measure the petitioner's perceived need for responsive force (ECF No. 21-1 at 109). The jury was instructed on reasonable doubt. (ECF No. 21-1 at 87.)

The state court's conclusion was reasonable in light of the evidence presented at trial. The evidence in the record regarding petitioner's purported self-defense theory against Ventimiglia and Quinn was lacking. Ventimiglia and Quinn became involved only after petitioner struck Wallace and attempted to hit Wallace a second time. In reaching the verdict, the jury implicitly concluded Ventimiglia and Quinn were lawfully performing their duties.

////

1      The record confirms that there was no substantial evidence to support an instruction that if

2   petitioner received a threat from Wallace that petitioner reasonably associated the threat with

3   Quinn and Ventimiglia.  There was no evidence petitioner associated any perceived threat from

4   Wallace with Ventimiglia or Quinn.  As explained by the state court, the only connection among

5   these three was their status as officers, which was insufficient to support an inference that

6   Ventimiglia or Quinn posed an imminent threat to petitioner's safety.

7      Finally, as noted by the state court, such officers were obligated to intervene in the

8   altercation between petitioner and Wallace, no matter the circumstances.  Therefore, in convicting

9   petitioner as to officers Ventimiglia and Quinn, the jury necessarily found, beyond a reasonable

10   doubt, that the use of force was lawful, that no excessive force was used, and that petitioner did

11   not act in self-defense.  Here, not having a self-defense instruction did not have a substantial or

12   injurious effect on the verdict.

13      Petitioner also claims that the trial court's failure to *sua sponte* instruct on CALCRIM No.

14   3470 denied petitioner the privilege of a self-defense defense, yet petitioner fails to demonstrate a

15   reasonable likelihood that the jury in his case misunderstood the instructions given at his trial

16   either to suggest a standard of proof lower than due process requires, or to allow conviction on

17   factors other than the prosecution's evidence.  Reviewing the jury instructions in their entirety,

18   this court finds no reasonable likelihood that the jury misunderstood that petitioner's defense

19   theory was self-defense, or that the government had the burden to prove petitioner's guilt beyond

20   a reasonable doubt.

21      The jury was instructed as to the availability of self-defense against an officer who uses

22   unreasonable or excessive force or is otherwise not lawfully performing his or her duties.  (ECF

23   No. 21-1 at 105, 109; CALCRIM Nos. 2670, 2671.)  Such instructions informed the jury that the

24   prosecution must prove that the officers were lawfully performing their duties and that the

25   officers were not lawfully performing their duties if they were using unreasonable or excessive

26   force.  (Id.)  The instructions also informed the jury that petitioner could use reasonable force to

27   defend himself against any use of unreasonable or excessive force and that reasonable force was

28   defined as:

when he or she: (1) uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force; and (2) uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection.

(ECF No. 21-1 at 10; CALCRIM No. 2671.)

Therefore, the jury was instructed that petitioner was entitled to defend himself from unreasonable or excessive force only if the officers engaged in such conduct.

For the above reasons, the undersigned finds that there is no reasonable possibility that the failure to separately instruct the jury with a self-defense instruction had a substantial or injurious effect on the jury's verdict. Thus, this court finds that the state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority, nor is it an unreasonable application of the facts.

VI. <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 10, 2018

/ar/plas2412.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

23